IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRITISH AMERICAN INSURANCE INTERMEDIARIES, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> MILNER FINANCIAL, LLC, et al., <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 1:23-CV-3897-TWT |

**OPINION AND ORDER**

This is a trademark infringement action. It is before the Court on the Defendants Integrity Marketing Group, LLC ("IMG"), Integrity Marketing Partners, LLC ("IMP"), and American Independent Marketing, Inc. ("AIM")'s Partial Motion to Dismiss [Doc. 18] and the Defendants Milner Financial, LLC, Milner Financial Services, LLC, and The Milner Agency, Inc. (collectively, the "Milner Defendants")'s Motion to Adopt and Join [Doc. 20]. For the reasons set forth below, the Defendants IMG, IMP, and AIM's Partial Motion to Dismiss [Doc. 18] is GRANTED in part and DENIED in part, and the Milner Defendant's Motion to Adopt and Join [Doc. 20] is GRANTED.

### I.   Background[1]

This case arises from allegations that the Defendants misappropriated

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

the use of the Plaintiffs' trademark and improperly diverted their assets and customers. (Compl. ¶¶ 1, 6). Since the 1980s, the Plaintiff British American Insurance Intermediaries, Inc. ("BAII") and its holding company, the Plaintiff Security Benefit Associates Group Services, Inc. ("SBAGS"), have operated as an insurance company under the name "The Milner Group." (*Id.* ¶¶ 26–28). In 1990, one of BAII's co-founders, Chip Milner, left the company to form The Milner Agency, Inc. ("MAI"). (*Id.* ¶ 29). For twenty-five years following, BAII, SBAGS, and MAI operated amicably under the "Milner Family Agreement,"[2] which purportedly allowed MAI to use the Milner Group name and other specified "Milner Assets."[3] (*Id.* ¶ 33). The Plaintiffs BAII and SBAGS allege that the amicability ended in November 2014 when Chip Milner, who was then CEO of MAI, evicted them from their shared building space after a dispute over an employee benefits management change. (*Id.* ¶ 34).

In March 2015, SBAGS filed a trademark application for "The Milner Group" as an insurance agency and brokerage service, which MAI opposed. (*Id.* ¶¶ 35–36). The trademark ultimately registered in July 2017 after MAI failed to respond to SBAGS's motion to dismiss MAI's opposition. (*Id.* ¶¶ 45–47). Since the original trademark application filing, a series of lawsuits between

---

[2] The Defendants claim that no such Milner Family Agreement exists. (Br. in Supp. of Defs.' Mot. to Dismiss, at 4).

[3] Those assets include phone numbers, a website, a physical location, an email server, a database listing agents and customers, social media accounts, staff, utilities, supplies, and more. (Compl. ¶ 33).

the parties has ensued. First, in May 2017, Chip Milner filed a lawsuit against BAII and two of its co-founders, Lat Milner and Whit Milner (Chip's brothers), claiming ownership of stock in BAII. (*Id.* ¶¶ 26, 44). Chip Milner voluntarily dismissed the suit in July 2017. (*Id.* ¶ 48).

Several weeks later, another dispute arose when Whit Milner attempted to sell his shares in BAII to Chip's son, Chad. (*Id.* ¶ 49). When Lat learned of the purported sale, he informed Whit that he intended to exercise BAII's option to buy back the shares under their agreement's right of first refusal. (*Id.* ¶¶ 50–51). Lat eventually sued Whit in Barrow County Superior Court in May 2018 to enforce his right to the shares. (*Id.* ¶ 55). The Plaintiffs claim that at that point, however (and unbeknownst to them), the Defendants "had already undergone a plan to financially destroy and distract Plaintiffs with extensive litigation, which would provide them with the time they needed to divert all the Milner Assets and carry out the claims described" in the Complaint. (*Id.* ¶ 56). Lat ultimately prevailed on his suit two years later in September 2020, making him the sole remaining shareholder of BAII. (*Id.* ¶ 63).

In November 2020, a third lawsuit between the parties ensued in Gwinnett County Superior Court, where Whit and MAI sued BAII and SBAGS seeking damages, injunctive relief, and a declaratory judgment entitling them to the Milner Assets. (*Id.* ¶ 65). The court stayed the case pending appeal of the Barrow County suit, which the Georgia Court of Appeals affirmed in March

3

2022. (*Id.* ¶¶ 66–67). The Barrow County Superior Court awarded attorneys' fees to Lat in May 2022, finding that Whit's counterclaims and defenses lacked substantial justification. (*Id.* ¶ 68). The resolution of the Gwinnett County case is unclear from the Complaint's allegations.

Expanding its footprint in health and life insurance product distribution services, IMG announced its acquisition of MAI on November 14, 2022. (*Id.* ¶ 71; Br. in Supp. of Defs.' Mot. to Dismiss, at 4). The following month, Chip, Whit, and Chad sent a letter to Lat providing notice that MAI would be terminating certain services (phone, database, and email servers) pursuant to an "oral agreement." (Compl. ¶ 73; Doc. 1-21). BAII and SBAGS claim that "from 2015 through 2022, unbeknownst to Plaintiffs and [their] officers, Defendants had been unilaterally assuming control of the Milner Assets from Plaintiffs" and "used years of legal and personal battles to distract Plaintiffs from their wrongdoings." (Compl. ¶ 74). Issues pertaining to IMG's acquisition of MAI continued to arise leading up to the filing of this lawsuit. (*See e.g., id.* ¶¶ 76, 78, 82).

The Plaintiffs BAII and SBAGS filed the present action on August 30, 2023. They bring a litany of claims against IMG, IMP, AIM, and the Milner Defendants, including claims for trademark infringement, false designation of origin, cybersquatting, violation of the Georgia Uniform Deceptive Trade Practices Act, tortious interference, common law trademark infringement,

4

violation of the Georgia Computer Systems Protection Act, unfair competition, conversion, bailment, unjust enrichment, civil conspiracy, violation of the Georgia Civil RICO Act, attorneys' fees, and pre-judgment interest. The Defendants now partially move to dismiss the claims against them.

## II.     Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's

claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.     Discussion

The Defendants move to dismiss the Plaintiffs' tortious interference (count V), conversion (count IX), bailment (count X), unjust enrichment (count XI), civil conspiracy (count XII), and Georgia Civil RICO Act (count XIII) claims as insufficiently pleaded and time-barred under the governing statutes of limitations. (Br. in Supp. of Defs.' Mot. to Dismiss, at 4). They also move to dismiss all asserted claims against the Defendant AIM. In response, the Plaintiffs agree to dismiss the tortious interference, bailment, civil conspiracy, and Georgia Civil RICO Act claims, but they oppose dismissal of the conversion and unjust enrichment claims and the claims against AIM. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 1).

The Defendants contend that the Plaintiffs cannot state a conversion or unjust enrichment claim against them because the four-year statutes of limitations bar the claims. (Br. in Supp. of Defs.' Mot. to Dismiss, at 13, 21–22). The Plaintiffs argue that their conversion and unjust enrichment claims are timely filed because the actual conversion and unjust enrichment at issue here did not occur until December 2022, when MAI notified the Plaintiffs of the termination of their rights and access to the allegedly converted property. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 6–7, 9).

6

The Court finds that the Plaintiffs' conversion and unjust enrichment claims, as pleaded, are barred by the four-year statute of limitations. Under Georgia law, "[a]ctions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues." O.C.G.A § 9-3-32. "The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained her action to a successful result." *Chep USA v. Mock Pallet Co.*, 138 F. App'x 229, 237 (11th Cir. 2005) (citation omitted). Moreover, "[m]ere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitations, for a plaintiff must exercise reasonable diligence to learn of the existence of a cause of action." *HealthPrime, Inc. v. Smith/Packett/Med-Com, LLC*, 428 F. App'x 937, 942 (11th Cir. 2011) (citation omitted). Similarly, Georgia courts impose a four-year statute of limitations on unjust enrichment claims under O.C.G.A § 9-3-26 that begins to run "on the date that suit on the claim can first be brought." *F&S Glob. Dev., LLC v. Renasant Bank*, 2013 WL 12247812, at *2 (N.D. Ga. Feb. 19, 2013).

Here, the Plaintiffs claim that "from 2015 through 2022, unbeknownst to Plaintiffs and [their] officers, Defendants had been unilaterally assuming control of the Milner Assets from Plaintiffs" and "used years of legal and personal battles to distract Plaintiffs from their wrongdoings." (Compl. ¶ 74).

7

But from these vague allegations, the Court cannot readily ascertain the time when the Plaintiffs could have first maintained their action to a successful result. And moreover, the continuing tort theory is limited to personal injury actions and is therefore inapplicable to conversion and unjust enrichment actions. *Johnson v. MacMillan Publishers, Ltd.*, 2012 U.S. Dist. LEXIS 180515, at *34 (N.D. Ga. Mar. 27, 2012). Accordingly, whereas here the Plaintiffs frame the alleged conversion and unjust enrichment as beginning in 2015 and occurring over a period of seven years, their claims as pleaded cannot survive the four-year statutes of limitations. The Plaintiffs' conversion and unjust enrichment claims should therefore be dismissed.

Finally, the Defendants move to dismiss all claims against AIM as failing to point to any specific conduct that would support the causes of action against it. (Br. in Supp. of Defs.' Mot. to Dismiss, at 23). The Plaintiffs contend, in response, that the allegations against the "Integrity Defendants" (IMG, IMP, and AIM) and against all Defendants generally encompass actionable conduct by AIM. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 10). The Court concludes that the Defendants have failed to carry their burden to show that the Plaintiffs have failed to state plausible claims against AIM. This is not one of the rare cases where the Plaintiffs have "assert[ed] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim

8

is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Rather, the Plaintiffs bring all of their claims against all Defendants and plausibly plead the Defendant AIM's role in the claims. (*See, e.g.*, Compl. ¶¶ 20, 83, 201). Accordingly, the Defendants are not entitled to the dismissal of the remaining claims against AIM.

## IV.     Conclusion

For the reasons set forth above, the Defendants IMG, IMP, and AIM's Partial Motion to Dismiss [Doc. 18] is GRANTED in part and DENIED in part, and the Milner Defendant's Motion to Adopt and Join [Doc. 20] is GRANTED. The Partial Motion to Dismiss [Doc. 18] is GRANTED as to the Plaintiffs' tortious interference (count V), conversion (count IX), bailment (count X), unjust enrichment (count XI), civil conspiracy (count XII), and Georgia Civil RICO Act (count XIII) claims; and it is DENIED as to the remaining claims against the Defendant AIM.

SO ORDERED, this ___20th___ day of February, 2024.

                                                   /s/ Thomas W. Thrash
                                                   THOMAS W. THRASH, JR.
                                                   United States District Judge