IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRITISH AMERICAN INSURANCE INTERMEDIARIES, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> MILNER FINANCIAL, LLC, et al., <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 1:23-CV-3897-TWT |

### OPINION AND ORDER

This is a trademark case. It is before the Court on Plaintiff Security Benefit Associates Group Services, Inc. ("Security Benefit Associates")'s Motion to Dismiss Defendant Integrity Marketing Group, LLC ("Integrity Marketing")'s Counterclaim. [Doc. 36]. For the reasons set forth below, Plaintiff Security Benefit Associates's Motion to Dismiss [Doc. 36] is DENIED.

### I. Background[1]

This case arises out of the alleged misappropriation of THE MILNER GROUP mark. Plaintiffs Security Benefit Associates and British American Insurance Intermediaries, Inc. ("British American Insurance") filed the present lawsuit on August 30, 2023, bringing a litany of claims—including trademark infringement, false designation of origin, cybersquatting, and

---

[1] The Court accepts the facts as alleged in the Countercomplaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

more—against Integrity Marketing, The Milner Agency, Inc. ("The Milner Agency"), and several other defendants. (*See generally* Compl.). A more detailed account of the Plaintiffs' allegations may be found in the Court's previous order filed on February 20, 2024. (Op. and Order, [Doc. 29], at 1-5). As part of the Defendants' Answer, Integrity Marketing asserted a counterclaim seeking the cancelation of THE MILNER GROUP mark for fraud upon the USPTO. (Countercl., [Doc. 35], ¶¶ 44-60).[2]

In its counterclaim, Integrity Marketing alleges the following. British American Insurance was formed in 1982 by Seixas G. Milner, Sr. with four shareholders—his sons Seixas G. Milner, Jr., Frederick R. Milner, Willis Latimer Milner, and Whitner Reade Milner. (*Id.* ¶ 7). The sole purpose of British American Insurance was to sell health insurance. (*Id.*). In 1983, Security Benefit Associates was formed to operate the health insurance business of British American Insurance, and British American Insurance became the holding company of Security Benefit Associates. (*Id.* ¶ 8). From 1983 through at least 1989, Security Benefit Associates was known to the public and the trade as "Security Benefit Associates." (*Id.* ¶ 9). Then, Seixas G. Milner, Jr. left Security Benefit Associates in 1990 to form The Milner Agency,

---

[2] The paragraphs for the Defendants' Answer and Integrity Marketing's counterclaim are in the same document but are separately enumerated. For the allegations in Integrity Marketing's counterclaim, the Court will cite to the document as Integrity Marketing's "Counterclaim" and the paragraph enumeration will start where the counterclaim begins.

which would offer life insurance services. (*Id.* ¶ 10).

Since at least as early as 1990, The Milner Agency has consistently and continually provided life insurance, annuities, and long-term care and disability insurance services under the service mark THE MILNER GROUP. (*Id.* ¶ 11). During that same time, The Milner Agency has owned, advertised, marketed, and controlled THE MILNER GROUP mark and the life insurance services rendered under that mark. (*Id.* ¶ 12). The Milner Agency has used THE MILNER GROUP mark in various ways, such as setting up a website with the mark, developing logos for the mark, putting the mark on office buildings, and advertising and marketing with the mark. (*Id.* ¶¶ 13-18). For thirty years, Security Benefit Associates has rented office space and used support services—such as email, utilities, and supplies—that were owned, operated, and controlled by The Milner Agency. (*Id.* ¶ 23). Integrity Marketing, a distributor of life and health insurance as well as a provider of wealth management and retirement planning solutions, acquired The Milner Agency on November 14, 2022. (*Id.* ¶ 22).

On March 6, 2015, Security Benefit Associates filed an application ("'368 Application") to register THE MILNER GROUP as a trademark in the USPTO. (*Id.* ¶ 24). Security Benefit Associates knowingly made several misrepresentations during the prosecution of the '368 Application. First, Security Benefit Associates falsely claimed in the '368 Application that it had

3

been using THE MILNER GROUP in interstate commerce, as a trademark, since at least as early as January 1, 1989. (*Id.* ¶ 25). Prior to 1990, there was no trade name or organization known as "The Milner Group," and Security Benefit Associates was operating as "Security Benefits Associates" in January 1989. (*Id.*). Second, in support of the '368 Application, Security Benefit Associates submitted a screenshot from The Milner Agency's website as proof of Security Benefit Associates's use of the mark. (*Id.* ¶ 26). Third, Security Benefit Associates submitted a Section 2(f) Claim of Acquired Distinctiveness on November 19, 2015, claiming that the mark had become distinctive through Security Benefit Associates's "substantially exclusive and continuous use of the mark in commerce . . . for at least the five years immediately before the date of this statement." (*Id.* ¶ 28). Finally, in support of Security Benefit Associates's Declaration of Use of Mark in Commerce ("Section 8 Declaration"), Security Benefit Associates provided a purported screenshot of an email signature as proof of Security Benefit Associates's use of the mark. (*Id.* ¶¶ 30-31, 40). However, the email server depicted is owned by The Milner Agency. (*Id.* ¶ 34). Security Benefit Associates repeatedly affirmed the veracity of their assertions under penalty of perjury. (*Id.* ¶¶ 27, 29-30, 35).

      Security Benefit Associates made these claims and submitted these images even though it was aware that The Milner Agency had been using THE MILNER GROUP mark since 1990 and that the email server and website were

owned and operated by The Milner Agency. (*Id.* ¶¶ 36, 38-40). In doing so, it intended to deceive—and, in fact, did deceive—USPTO through its submissions and assertions. (*Id.* ¶¶ 49-50, 52, 57). Because Security Benefit Associates committed fraud during the prosecution of the '368 Application and the renewal of the '004 Registration, Integrity Marketing seeks cancellation of THE MILNER GROUP mark. (*Id.* ¶ 60). Security Benefit Associates has moved to dismiss this counterclaim.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is

required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Background

Security Benefit Associates asserts that Integrity Marketing's counterclaim fails for four reasons: (1) lack of standing, (2) statute of limitations, (3) claim preclusion, and (4) failure to state a claim. None of these grounds provide a basis for dismissing the counterclaim.

#### A. Standing

First, Security Benefit Associates argues that Integrity Marketing does not have standing to bring its counterclaim because O.C.G.A. § 44-12-24 prohibits assignment of causes of action for injuries arising from fraud. (Br. in Supp. of Mot. to Dismiss, at 3-5). As an initial matter, the Court seriously questions whether Georgia law can restrict the reach of a federal trademark claim brought in federal court. Integrity Marketing raised this issue, and Security Benefit Associates responded by stating: "Despite, [Integrity Marketing's] contention that O.C.G.A. § 44-12-24 does not apply to its federal cause of action, [Security Benefit Associates] states that O.C.G.A. § 44-12-24 explicitly states that a right of action for personal torts, for legal malpractice,

6

or for injuries arising from fraud may not be assigned." (Reply in Supp. of Mot. to Dismiss, at 1). This misses the point entirely. If Georgia law has no application to this counterclaim, it is entirely irrelevant what O.C.G.A. § 44-12-24 states. Security Benefit Associates provides no explanation whatsoever for why Georgia law should apply in the first place. Regardless, even assuming *arguendo* that Georgia law does apply here, Integrity Marketing still has standing.

A party seeking cancellation of a trademark pursuant to 15 U.S.C. § 1064 "must prove two elements: (1) that it has standing; and (2) that there are valid grounds for canceling the registration. Standing is the more liberal of the two elements and requires only that the party seeking cancellation believe that it is likely to be damaged by the registration." *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000) (citations omitted). Security Benefit Associates errs by assuming that "[t]he only reason [Integrity Marketing] would have standing is due to its acquisition of codefendant [The Milner Agency]." (Reply Br. in Supp. of Mot. to Dismiss, at 1). In *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776 (11th Cir. 2020), Royal Palm Properties sued its competitor, Pink Palm Properties, for trademark infringement, and Pink Palm Properties asserted a counterclaim seeking cancellation of Royal Palm Properties's trademark. Royal Palm Properties argued, *inter alia*, "that Pink Palm Properties lacks standing

7

to challenge its mark based on marks owned by a third party." *Id.* at 787. The Eleventh Circuit disagreed. It found that the purpose of the standing requirement "is merely to ensure that the challenger has a 'direct and personal stake in the outcome' and is not a 'mere intermeddler.'" *Id.* at 788 (citation omitted). The Eleventh Circuit concluded that Pink Palm Properties had a direct, personal stake in the litigation because it was being sued for trademark infringement based off of the trademark they were attempting to cancel. *Id.* ("We think it's clear that Pink Palm Properties has the requisite direct, personal interest in the outcome of this litigation. Were the 'Royal Palm Properties' trademark cancelled, Pink Palm Properties would be free to use the mark in its promotional materials, without fear of another lawsuit." (citation omitted)).

Likewise, here, Security Benefit Associates has sued Integrity Marketing for trademark infringement—among other claims—based on Integrity Marketing's alleged use of THE MILNER GROUP mark. (Compl. ¶¶ 94-120). Integrity Marketing therefore has a direct, personal stake in the outcome of the counterclaim and is not a mere intermeddler. Because Integrity Marketing has standing on its own, it need not rely on any assignment theory to assert its counterclaim. Thus, even if Georgia law somehow applies to this counterclaim, O.C.G.A. § 44-12-24's bar on assignments of fraud-based causes of actions would not warrant dismissal of the counterclaim.

8

B.  Statute of Limitations

Security Benefit Associates contends that the counterclaim is time-barred. It asserts that the Lanham Act does not provide any statute of limitations and that the most analogous state law is Georgia's four-year statute of limitations governing injuries to personalty. This is incorrect. The plain language of the statute states that a person who believes that they will be damaged by the registration of a mark that was obtained fraudulently may petition to cancel the registration of that mark "[a]t any time." 15 U.S.C. § 1064(3); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 202 (1985) ("Within five years of registration, any person who believes that he is or will be damaged by registration may seek to cancel a mark. A mark may be canceled at any time for certain specified grounds, including that it was obtained fraudulently or has become generic." (citations omitted)); *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes and of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, the Ecumenical Ord.*, 702 F.3d 1279, 1289 (11th Cir. 2012) ("At any time, a party may petition to cancel a registered mark on the ground that the registration was procured by fraud, even if that mark has become incontestable." (citation omitted)).

Meanwhile, almost all of the cases to which Security Benefit Associates cites do not involve the cancelation of a mark's registration and instead involve

9

the statute of limitations under 15 U.S.C. § 1125(a). *See Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1202 (11th Cir. 1997); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835-36 (9th Cir. 2002); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191-92 (2d Cir. 1996); *Belmora, LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 293-94 (4th Cir. 2021). The only case that Security Benefit Associates cites which *may*[3] involve 15 U.S.C. § 1064(3) is *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 143 (3d Cir.1997). However, even if *Beauty Time, Inc.* is referring to the provision at issue here, *Sovereign Military Hospitaller* is binding on this Court. Since that case held that a party may petition to cancel a registration "[a]t any time," the Court finds that the counterclaim is not time-barred.

## C. Claim Preclusion

Security Benefit Associates argues that claim preclusion bars the counterclaim because The Milner Agency filed an opposition to Security Benefit Associates's trademark application on February 4, 2016, and because that opposition was dismissed with prejudice on June 7, 2017. (Br. in Supp. of Mot. to Dismiss, at 7). Claim preclusion occurs when "a final judgment on the

---

[3] *Beauty Time, Inc.*, 118 F.3d at 143, never cites to 15 U.S.C. § 1064(3) and instead merely describes one cause of action as "fraud under the Lanham Act." This could be in reference to 15 U.S.C. § 1064, but it could also be referring to another provision, such as 15 U.S.C. § 1120 ("Civil liability for false or fraudulent registration"). Notably, 15 U.S.C. § 1120 does not contain any express statute of limitations.

10

merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted). "In the Eleventh Circuit, a party seeking to invoke the doctrine must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) (citations omitted). After satisfying those four elements, "the court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, [claim preclusion] applies." *Id.* (citation omitted). "At all times the burden is on the party asserting [claim preclusion] . . . to show that the later-filed suit is barred." *Id.* (citation omitted).

Integrity Marketing does not dispute that the opposition filed by The Milner Agency resulted in a final decision on the merits by a court of competent jurisdiction and instead focuses its arguments on the other elements. The Court agrees with Integrity Marketing's argument that Security Benefit Associates has failed to meet its burden as to the third element of claim preclusion. Integrity Marketing was not a party to the previous case and did not acquire The Milner Agency until five years after the case ended. (*See*

11

Compl. Ex. 6; Countercl. ¶ 22). Security Benefit Associates argues, however, that there is privity between Integrity Marketing and The Milner Agency. (Reply Br. in Supp. of Mot. to Dismiss, at 5-6). "Privity describes a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty," such as "where the nonparty has succeeded to the party's interest in property, where the nonparty controlled the original suit, where the nonparty's interests were represented adequately by the party in the original suit, and where the party and nonparty have concurrent interests in the same property right." *Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986) (quotation marks and citations omitted).

Security Benefit Associates specifically argues that there is privity because (1) The Milner Agency and Integrity Marketing are "sufficiently close so a judgment for or against [The Milner Agency] would have bound or protected [Integrity Marketing]" and (2) "both also have concurrent interest in the same property right—THE MILNER GROUP trademark." (Reply Br. in Supp. of Mot. to Dismiss, at 6). These arguments are not explained any further and are unsupported by any authority or record citation. Without a more detailed description of the relationship between The Milner Agency and Integrity Marketing, the Court cannot conclude that Security Benefit Associates has met its burden of showing privity by virtue of their closeness.

12

*See Hart*, 787 F.2d at 1472-73 (reversing a finding of privity as clear error because the record contained "no facts as to the percent of ownership, YMC/USA's right or ability to control Yamaha Parts, or whether these entities operated independently or as one unit"). Relatedly, Security Benefit Associates does not provide any description of what sort of interest Integrity Marketing has in THE MILNER GROUP mark. Based on the discussion in *Hart*, 787 F.2d at 1472-73, it seems unlikely that mere acquisition of a company is sufficient to find they have concurrent interests that will give rise to claim preclusion, especially for a claim that was raised pre-acquisition. At the very least, Security Benefit Associates does not provide any citations that would be enough to carry its burden of showing that claim preclusion applies here. Accordingly, the Court does not find at this time that the counterclaim is barred by claim preclusion.[4]

### D. Failure to State a Claim

Lastly, Security Benefit Associates argues that Integrity Marketing has failed to state a claim. Security Benefit Associates's arguments on this point are largely contrary to the basic rules of civil procedure. Under Rule 8(a)(2), a pleading need only contain "a short and plain statement of the claim showing

---

[4] The Court also questions whether The Milner Agency's opposition, which was based on likelihood of confusion, is sufficiently similar to this claim for fraud on the USPTO to say they "arise[] out of the same nucleus of operative fact" and therefore constitute the same cause of action for purposes of claim preclusion. *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 893 (11th Cir. 2013).

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Since this counterclaim alleges fraud, Integrity Marketing "must state with particularity the circumstances constituting fraud or mistake," though it may allege malice, intent, knowledge, and other conditions of a person's mind generally. Fed. R. Civ. P. 9(b). To meet the pleading standard, the counterclaim need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted).

Even though it cites to *Iqbal* in the legal standard section of its brief, Security Benefit Associates applies the wrong standard and asserts that "[t]he party seeking to cancel a mark bears the burden of proving the alleged fraud by clear and convincing evidence" and that "any doubt must be resolved against" the party charging that fraud occurred. (Br. in Supp. of Mot. to Dismiss, at 9-10 (citations omitted); *see also id.* at 11 ("A party seeking cancellation for fraudulent procurement must prove the alleged fraud by clear and convincing evidence.")). While this will be true at trial, it is far too high of a burden for a 12(b)(6) motion. *See, e.g.*, *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010) ("[The plaintiff] need not prove his case on the pleadings").

Security Benefit Associates argues that the counterclaim should be dismissed because Integrity Marketing "provides no evidence to support its

14

contention" that Security Benefit Associates committed fraud by claiming that it had used THE MILNER GROUP mark since January 1, 1989. (Br. in Supp. of Mot. to Dismiss, at 16).[5] Going even further, Security Benefit Associates asserts facts from its own complaint to disprove the counterclaim and faults Integrity Marketing for providing "zero evidence to show" the contrary. (*Id.* at 16, 19-20 (arguing that the alleged misrepresentation on the Section 2(f) Claim of Acquired Distinctiveness was immaterial because the Plaintiffs pled that they licensed use to The Milner Agency)). Moreover, Security Benefit Associates contends that "[t]here is no doubt that Plaintiff Security Benefit Associates believed [its statements in the 2(f) Claim of Acquired Distinctiveness] to be true then and still believes it to be true now." (*Id.* at 19). However, this statement is contradicted by the counterclaim allegations. Integrity Marketing alleges (1) that "[The Milner Agency] has invested substantial time, energy, and money, into developing, marketing, and advertising," using THE MILNER GROUP mark for over thirty years, (2) that Security Benefit Associates knew[6] of this when it and its counsel executed the declaration in support of its Section 2(f) Claim of Acquired Distinctiveness in

---

[5] This is in addition to the bizarre suggestion that Integrity Marketing cannot know this claim is false because Integrity Marketing was not "even in existence prior to 1990 and, therefore, have no knowledge of Plaintiff Security Benefit Associates's prior operations." (Br. in Supp. of Mot. to Dismiss, at 16).

[6] As stated above, Rule 9(b) permits knowledge to be pled generally. Fed. R. Civ. P. 9(b).

15

2015, and (3) that Security Benefit Associates claimed in the Section 2(f) Claim of Acquired Distinctiveness that THE MILNER GROUP mark had become distinctive through Security Benefit Associates's "substantially exclusive and continuous use . . . for at least the five years immediately before the date of this statement." (Countercl. ¶¶ 19, 28-29, 51). Since Integrity Marketing's factual allegations must be taken as true and all reasonable inferences must be drawn in Integrity Marketing's favor, the Court cannot consider any of these arguments.

The only argument that Security Benefit Associates presents that does not conflict with the pleading standard is its argument that it did not commit fraud by submitting screenshots of a website and email signature block, each of which Integrity Marketing alleges was owned by The Milner Agency. (Br. in Supp. of Mot. to Dismiss, at 17-18). Security Benefit Associates asserts that ownership of the website or email domain is "irrelevant and immaterial to federal registration of a trademark." (*Id.* at 18). However, Security Benefit Associates does not provide any legal authority to support that claim. Moreover, even if the allegations about the ownership were on their own insufficient to state a claim, that does not warrant dismissing the entire claim since Integrity Marketing alleges other forms of fraud committed by Security Benefit Associates upon the USPTO that together or independently may state a claim.

## IV.  Conclusion

For the foregoing reasons, Plaintiff Security Benefit Associates's Motion to Dismiss [Doc. 36] is DENIED.

SO ORDERED, this ___16th___ day of October, 2024.

                                                  THOMAS W. THRASH, JR.
                                                  United States District Judge